1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11 NICKOLAS TSUI and
WILLIAM LUGO, Individually and on
12    behalf of all others similarly situated,

13       Plaintiffs,

14    v.

15 UNIVERSAL SERVICES OF
   AMERICA, LP,
16 ALLIED UNIVERSAL TOPCO LLC,
   ALLIED UNIVERSAL BENEFITS
17    COMMITTEE, and
   JOHN AND JANE DOES 1-50,
18
       Defendants.
19

Case No. 8:22-cv-01158-JWH-JDE

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 82]**

20
21
22
23
24
25
26
27
28

1    Before the Court is the unopposed motion of Plaintiffs Nickolas Tsui and
2  William Lugo, individually and on behalf of current and former participants in
3  and beneficiaries to the Allied Universal 401(k) Plan (the "Plan"), for
4  preliminary approval of their class action settlement.[1]  The Court concludes that
5  this matter is appropriate for resolution without a hearing.  *See*
6  Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support,[2] as
7  well as the factors set forth in Rule 23 of the Federal Rules of Civil Procedure,
8  the Court **GRANTS** the Motion.

### I.  BACKGROUND

10    Plaintiffs commenced the instant class action against Defendants pursuant
11  to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461
12  ("ERISA") in June 2022.[3]  In short, Plaintiffs allege that Defendants Universal
13  Services of America, LP: Allied Universal Topco LLC; Allied Universal Benefits
14  Committee; and John and Jane Does 1-50 mismanaged Plaintiffs' 401(k) Plan.
15  Plaintiffs assert the following two claims for relief:  (1) breach of fiduciary duty
16  of prudence; and (2) breach of fiduciary duties in violation of duty to monitor
17  covered service providers.[4]

---

[1]    *See* Pl.'s Mot. for Preliminary Approval of Class Action Settlement (the
"Motion") [ECF No. 82].

[2]    The Court considered the documents of record in this action, including
the following papers:  (1) Compl. (the "Complaint") [ECF No. 1]; (2) Ans. (the
"Answer") [ECF No. 69]; (3) Motion; (4) Pls.' Mem. in Supp. of the Motion
(the "Memorandum") [ECF No. 83] (including its attachments).

[3]    Complaint ¶ 1.

[4]    *Id.* at ¶¶ 154-165 & 166-172.

In August 2022 Defendants moved to dismiss the Plaintiffs' Complaint,[5] and the Court denied that motion in its entirety.[6]  In April 2024 Defendants filed their Answer.[7]  A month later, the parties scheduled a mediation with David Geronemus of JAMS for October 23, 2024.[8]  The parties did not reach a settlement on the day of the mediation, but they continued to negotiate until November 11, 2024, when they reached an agreement.[9]  Plaintiffs filed the instant Motion for preliminary approval of their class action settlement agreement in February 2025.[10]  The Motion is unopposed.

**A.  Summary of Proposed Settlement**

The following is a summary of the proposed settlement agreement:[11]

**1.  Settlement Class**

The proposed settlement class is defined as follows:

All persons who participated in the Plan with account balances at any time during the period from June 13, 2016 through January 1, 2025 ("Class Period"), including any Beneficiary of a deceased Person who participated in the Plan and had an account balance at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan and had an account balance at any time during the Class Period.  Excluded from the Settlement

---

[5]    Defs.' Mot. to Dismiss [ECF No. 35]

[6]    Order Denying Defs.' Mot. to Dismiss [ECF No. 54].

[7]    *See* Answer.

[8]    Memorandum 2:28-3:2; Decl. of Andrew W. Ferich in Supp. of the Motion (the "Ferich Declaration") [ECF No. 83-2] ¶ 14; Decl. of Erich P. Schork in Supp. of the Motion (the "Schork Declaration") [ECF No. 83-3] ¶ 14.

[9]    Memorandum 3:21-25; Ferich Declaration ¶ 18; Schork Declaration ¶ 18.

[10]    *See* Motion.

[11]    Memorandum, Ex. 1 (the "Settlement Agreement") [ECF No. 83-1].

Class are Defendants and their Beneficiaries, any Plan fiduciaries, and the Judges assigned to this case."[12]

The Plaintiffs estimate that the class is likely to have 53,000 members.[13]

### 2.    Settlement Amount

Pursuant to the Settlement Agreement, a non-reversionary Qualified Settlement Fund ("Settlement Fund") in the amount of $1,400,000 will be created by Defendants or their insurers.[14]  The net settlement amount will be distributed to the Class in accordance with the Plan of Allocation, following deductions for (1) any Court-approved attorneys' fees and expenses; (2) any Court-approved class representative service awards; and (3) administrative expenses and notice charges.[15]

### 3.    Settlement Administration, Notice Costs, and Notice Plan

Administrative expenses will be paid from the Settlement Fund, including taxes, administration charges, and notice costs.[16]  The Settlement Administrator is to be Analytics Consulting, LLC.[17]  Administration expenses are estimated to be around $95,000.[18]

A proposed Notice to Class Members is attached as Exhibit A1 to the Settlement Agreement.[19]  Pursuant to the Settlement Agreement, Defendants and Defense Counsel shall provide information to identify Class Members and

---

[12]    *Id.* at § 1.44.

[13]    Memorandum 9:10-14.

[14]    Settlement Agreement §§ 1.24, 1.33, & 4.1.

[15]    *Id.* at §§ 1.2, 1.4, 1.30, 1.39, 4.3, 5.1, 5.3, & 6.1.

[16]    *Id.* at § 1.2, 4.3, & 5.1.

[17]    *Id.* at § 1.41.

[18]    Memorandum 6:25-26; Decl. of Decl. of Richard W. Simmons in Supp. of the Motion (the "Simmons Declaration") [ECF No. 83-4] ¶ 21.

[19]    Memorandum, Ex. A1 ("Notice to Class Members") [ECF No. 83-1].

to implement the Plan of Allocation to Class Counsel.[20]  Within 10 business days of the entry of this Order, the Defendants or Defense Counsel shall work with the recordkeeper to provide, to the extent available, the names, last known addresses, and email addresses of members of the Settlement Class.[21]  The Defendants or Defense Counsel shall work with the recordkeeper to provide the social security numbers of Settlement Class members in order to perform a change of address search in order to update out-of-date addresses.[22]  The Settlement Administrator will use the information provided to compile a preliminary list of Class Members in order to send the class notice and to calculate payments pursuant to the Plan of Allocation.[23]

Class Members may object to the settlement, as set forth below:

2.2.7  [] [A]ny objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Final Approval Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel.  To be filed validly, the objection and any notice of intent to participate or supporting documents must be filed at least 30 calendar days prior to the scheduled Final Approval Hearing.  All written objections and supporting papers must clearly (a) identify the case name and number; (b) state the Class Member's full name, current mailing address, and telephone number; (c) contain a statement by the

---

[20]    Settlement Agreement § 8.2.

[21]    *Id.*

[22]    *Id.*

[23]    *Id.*

Class Member that he or she believes themself to be a member of the Settlement Class and include proof that the Class Member is a member of the Settlement Class (e.g., copy of the Settlement Notice); (d) identify any specific factual and/or legal grounds for the objection; (e) identify whether the objection is an objection to the Settlement in part or in whole; (f) state whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (g) identify all counsel representing the Class Member, if any; (h) include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past three (3) years; (i) include all documents or writings that the Class Member desires the Court to consider; (j) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing; and (k) contain the signature of the Class Member or the Class Member's duly authorized attorney or representative. All objections must be submitted to the Court either by mailing them to the Clerk's Office of, or by filing them in person at, the United States District Court for the Central District of California, and a copy of all objections must be served upon proposed Class Counsel identified below. All objections must be filed or postmarked on or before the objection deadline, as established in the Preliminary Approval Order. Any Class Member who does not make their objections in the manner and by the date set forth in this paragraph shall be deemed to have waived any

objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court.  Without limiting the foregoing, any challenge to the Settlement Agreement, the Preliminary Approval Order, and the Final Approval Order and Judgment shall be pursuant to appeal under the applicable rules of appellate procedure and not through a collateral attack.  Any person wishing to speak at the Final Approval hearing shall file and serve a notice of intent to participate within the time limitations set forth above;

2.2.8 [] [A]ny party may file a response to an objection by a Class Member.[24]

### 4.    Plan of Allocation

First, for each Class Member, the Settlement Administrator will calculate the sum of that Class Member's account balances for each year of the class period.[25]  That balance will then be summed for all Class Members, and each Class Member will be then allocated a share of the net settlement amount based upon the proportion of each Class Member's balance to the sum balance of all Class Members.[26]  Members who are entitled to a distribution of less than $10 will receive a distribution of $10 (the "De Minimis Amount").[27]  The Settlement Administrator will then progressively increase the Class Member's awards falling below the De Minimis Amount until the lowest participating Class

---

[24]    *Id.* at §§ 2.2.7 & 2.2.8.

[25]    Memorandum, Ex. B1 (the "Plan of Allocation") [ECF No. 83-1] § C.

[26]    *Id.*

[27]    *Id.* at § D.

Member award is the De Minimis Amount, resulting in a "Final Entitlement
Amount" for each settlement member.[28]

Class Members and Beneficiaries or Alternative Payees with active
accounts—meaning an account with a positive balance—will receive the Final
Entitlement Amount in their Plan account.[29]  The Final Entitlement Amount
will be invested in accordance with, and proportionate to, the participant's
investment elections on file for new contributions.[30]  If no investment election is
on file, the payment will be directed to be invested in the Plan's default
investment option.[31]  Former Plan Participants without active accounts shall be
paid directly by check.[32]

Any amounts remaining in the qualified settlement fund shall be paid to
the Plan and used to defray Plan administrative costs and fees that would
otherwise be charged to Plan participants.[33]

### 5. Attorney's Fees and Costs and Class Representative Service Payments

The attorney's fees for class counsel will not exceed one-third of the
Settlement Fund, maximum $466,666.[34]  Class Counsel will also seek litigation
costs and expenses, not to exceed $50,000.[35]  Class Counsel will also seek an

---

[28]  *Id.*

[29]  *Id.* at § E.

[30]  *Id.*

[31]  *Id.*

[32]  *Id.* at § F.

[33]  *Id.* at § I.

[34]  Settlement Agreement § 6.1; Ferich Declaration ¶ 35; Schork Declaration ¶ 33.

[35]  Settlement Agreement § 6.1.

award of $3,000 as service payments to each of the two named Class
Representatives, totaling $6,000.[36]

### 6.    Review by an Independent Fiduciary

On behalf of the Plan, a Plan fiduciary shall retain an Independent
Fiduciary, who has no relationship or interest in any of the Settling Parties.[37]
The Independent Fiduciary will approve and authorize the settlement of
Released Claims.[38]  The Independent Fiduciary will comply with all relevant
conditions set forth in Prohibited Transaction Class Exemption 2003-39,
"Release of Claims and Extensions of Credit in Connection with Litigation," in
making its determination.[39]  The Independent Fiduciary will notify Defendants
directly of its determination in writing, with copies to Class Counsel and
Defense Counsel, which must be delivered no later than thirty calendar days
before the Final Approval Hearing.[40]

### 7.    Release

In exchange for the Settlement, the Class will release the Released Parties
from the Released Claims, as set forth below:

> 1.35.  "Released Claims" means any and all past, present, and
> future actual or potential claims (including claims for any and
> all losses, damages, unjust enrichment, attorneys' fees,
> disgorgement, litigation costs, injunction, declaration,
> contribution, indemnification or any other type or nature of
> legal or equitable relief), actions, demands, rights, obligations,

---

[36]  *Id.*

[37]  *Id.* at §§ 1.25 & 2.1.

[38]  *Id.* at § 1.25.

[39]  *Id.* at § 2.1.1.

[40]  *Id.* at § 2.1.2

liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen based in whole or in part on acts or failures to act through the date of the Final Approval Order:

1.35.1 That were asserted in the Class Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, or could have been alleged, in the operative Complaint filed in the Class Action; and/or

1.35.2 That arise out of, relate in any way to, are based on, or have any connection with (a) the selection, oversight, retention, monitoring, compensation, or fees of the Plan's service providers; (b) fees, costs, or expenses charged to, paid, or reimbursed by the Plan or any Class Member; (c) disclosures or failures to disclose information regarding the Plan's fees or service providers; (d) the compensation received by the Plan's service providers; (e) the services provided to the Plan or the costs of those services; (f) the management, oversight or administration of the Plan, the Plan's investment options, or the Plan's fiduciaries; (g) the use of forfeited Plan funds; or (h) alleged breach of the duty of loyalty, care, prudence, or any other fiduciary duties or prohibited transactions under ERISA; or

1.35.3 That would be barred by *res judicata* based on entry of the Final Approval Order; or

1.35.4 That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any Class Member in accordance with the Plan of Allocation; or

1.35.5 That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.

1.35.6 The Class Representatives, Class Members, and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides that:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Class Representatives, Class Members, and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.

1.35.7 "Released Claims" does not include any claims for benefits unrelated to this Settlement that the Class Representatives or

the Settlement Class may have to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final[41]

## II.  LEGAL STANDARD

### A.    Preliminary Settlement Approval

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  A district court may approve a proposed settlement of a class action only on finding the settlement to be "fair, reasonable, and adequate," after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats Class Members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

---

[41]    *Id.* at §§ 1.35 through 1.35.7.

But when the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir.2011). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted). A court may not "delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety." *Id.*

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

## B.    Preliminary Certification of Settlement Class

A district court may certify a class action under the Federal Rules of Civil Procedure if the parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b).

*See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  A party seeking class certification must establish the following:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  After satisfying those four prerequisites—regularly referred to as "numerosity," "commonality," "typicality," and "adequacy"—a party must also demonstrate one of the following:  (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action.  *See* Fed. R. Civ. P. 23(b)(1)–(3).  A plaintiff must prove the Rule 23 factors by a preponderance of the evidence.  *See Olean Wholesale Grocery Coop.*, 31 F.4th at 664.  "[P]laintiffs may use any admissible evidence" to do so.  *Id.* at 665.

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23.  *Id.* at 620.  Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.* (citations omitted).

## C.    Notice Requirements

"For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Notice must clearly state the following:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and quotation omitted).

Pursuant to Rule 23(e)(1), "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  *See* Fed. R. Civ. P. 23(e)(1).  If the parties show that the Court will likely be able to approve the proposed settlement under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal, then the Court must direct notice in a reasonable manner to all class members who would be bound by the proposal.  *See id.*

# III.  ANALYSIS

## A.  Preliminary Settlement Approval

### 1.  Adequacy of Representation by Class Representatives and Class Counsel

The first factor that the Court must consider is whether "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A).  Because Tsui and Lugo were both participants in the Plan during the Class Period,[42] they have actively participated in the litigation,[43] and they have no conflicts with the absent class members,[44] the Court finds that Tsui and Lugo have adequately represented the class up to this point in the case.

Further, attorneys Andrew W. Ferich and Robert Ahdoot of Adhoot & Wolfson, PC, and attorney Erich P. Schork of the Roberts Law Firm, U.S., P.C.—Class Counsel—have sufficiently established that they are highly qualified and experienced counsel in class action litigation, including ERISA litigation.[45]

### 2.  Arm's Length Negotiations

Next, the Court must evaluate whether the proposal was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  In consideration of the parties' mediation session with JAMS mediator David Geronemus[46] and Plaintiffs' counsel's attestations regarding the continued settlement negotiations

---

[42]    Memorandum 10:19-20.

[43]    *Id.* at 11:7-9; Ferich Declaration ¶ 31; Schork Declaration ¶ 29.

[44]    Memorandum 11:11-19.

[45]    Ferich Declaration ¶ 33 & 37-43; Schork Declaration ¶ 31 & 35-41.

[46]    Memorandum 2:28-3:2; Ferich Declaration ¶ 14; Schork Declaration ¶ 14.

thereafter, that Court finds that, at this point in time, the settlement was negotiated at arms-length, rigorously, and in good-faith.[47]

### 3.    Adequacy of Relief Provided for the Class

In considering whether the relief accorded to the Class is adequate, Rule 23 directs courts to consider (1) the "costs, risks, and delay" of a litigated outcome; (2) the effectiveness of the proposed method of distributing the relief to the class; (3) the terms of any proposed award of attorney's fees; and (4) any agreement made in connection to the proposed settlement. Fed. R. Civ. P. 23(e)(2)(C).

#### a.    Costs, Risk, Delay

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. Class Counsel has proposed that maximum damages could be in the range of up to $6 million.[48] That said, Class Counsel also acknowledge that continued litigation would pose risks to the Class—namely, the delay of relief, the possibility of a negative outcome at trial, and the possibility of a negative outcome upon appeal of judgment in favor of the Class.[49] Weighing the potential best outcome with the risks, the Court agrees that this factor leans in favor of preliminarily approving class settlement.

#### b.    Effectiveness of Method of Distributing Relief

The proposed method of distributing relief—either directly into the account of Class Members or by check mailed to Class Member without an

---

[47]    Ferich Declaration ¶ 17-23; Schork Declaration ¶ 17-23.

[48]    Ferich Declaration ¶ 26; Schork Declaration ¶ 26.

[49]    Ferich Declaration ¶ 24; Schork Declaration ¶ 24.

active account[50]—appears to the Court to be an effective method of distributing relief to all Class Members and leans in favor of granting preliminary approval.

### c.    Proposed Award of Attorney's Fees

The Court must also examine whether there is evidence of collusion—be it explicit or subtle. *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. Signs of collusion include situations when counsel is to receive a disproportionate distribution of the settlement, when the parties arrange for payment of attorney's fees separate from class funds, and when parties arrange for fees not awarded to revert to the Defendants, instead of class funds. *See id.*

The Court has seen no evidence of collusion—explicit or subtle—and the settlement appears to have been the product of serious and informed negotiations.[51] That said, the Court is concerned about Plaintiffs' statement that class counsel intends to seek up to 33.3% of the Settlement Fund as payment for attorney's fees.[52] That percentage exceeds the Ninth Circuit's benchmark. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (setting 25% as a benchmark for a reasonable fee award); *see, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *14 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (stating that "[t]he Ninth Circuit has repeatedly held that 25% of the gross settlement amount is the benchmark for attorneys' fees"). As Plaintiffs plan to file a separate motion for an award of attorneys' fees, costs, and the class representative service payments,[53] the Court will not deny the instant Motion on that basis. Instead, the Court instructs Plaintiffs to rigorously examine the Ninth Circuit standard prior to filing their fee motion.

---

[50]    Plan of Allocation §§ E & F.

[51]    Memorandum 14:23-15:16.

[52]    *Id.* at 6:3-7.

[53]    *Id.*

### d.    Agreement Identification Requirement

The Court must consider any agreement made in connection with the proposed settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & 23(e)(3). Accordingly, the Settlement Agreement has been provided to, and reviewed by, the Court.[54]

### 4.    Equitable Treatment of Class Members

Finally, the Court must analyze whether the proposed Settlement Agreement treats Class Members equitably to one another. Fed. R. Civ.  P. 23(e)(2)(D).  Here, each Class Members' Final Entitlement Amount is based upon the proportion of each Class Members' balance to the sum balance of all Class Members and adjusted so that the lowest distribution is the de Minimis distribution amount.[55]  Accordingly, the Court concludes that the Plan of Allocation is equitable and leans in favor of granting preliminary approval.

In summary, the terms set forth in the Settlement Agreement are preliminary approved, subject to further consideration at the hearing the Court will hold pursuant to Rule 23(e) to determine whether the Settlement should receive final approval by the Court.

### B.    Preliminary Certification of Settlement Class

### 1.    Rule 23(a) Requirements

### a.    Numerosity

While the numerosity requirement is "not tied to any fixed numerical threshold," Courts generally find classes with at least 40 members to be sufficiently numerous.  *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

---

[54]    *See generally* Settlement Agreement.

[55]    Plan of Allocation §§ B, C, & D.

The Plaintiffs' estimate that the Plan had 53,000 members throughout the
proposed class period, so the numerosity requirement is met.[56]

### b. Commonality

When examining Rule 23 Commonality, the Court must look to whether
there are common questions of law or fact that would "generate common
answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v.
Dukes*, 564 U.S. 338, 350 (2011). Here, as in many ERISA cases, the core
questions are whether Defendants breached their fiduciary duties to the Plan
and what losses the Plan suffered as a result of the alleged breaches of fiduciary
duties.[57] *See Munro v. Univ. of S. California*, 2019 WL 7842551, at *3 (C.D. Cal.
Dec. 20, 2019). Those core questions can be resolved by common proof. Thus,
the commonality requirement is satisfied.

### c. Typicality & Adequacy

To demonstrate that claims are "typical" of the class pursuant to
Rule 23(a), Plaintiffs must show that the claims are "reasonably co-extensive
with those of absent class members; they need not be substantially identical."
*DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1238 (9th Cir. 2024) (citing
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other
grounds by Wal-Mart*, 564 U.S. at 338). Typicality refers to the **nature** of the
claims or defenses, "and not to the specific facts from which it arose or the relief
sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).
"The test of typicality 'is whether other members have the same or similar
injury, whether the action is based on conduct which is not unique to the named
plaintiffs, and whether other class members have been injured by the same

---

[56]    Memorandum 9:10-14.

[57]    *Id.* at 9:27-10:2.

1    course of conduct.'" *Id.* (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508
2    (9th Cir. 1992)).

3    To represent the interests of a proposed class adequately under Rule 23,
4    "[r]epresentatives must be part of the class and possess the same interest and
5    suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*,
6    521 U.S. 591, 594-95 (1997). In the Ninth Circuit, a district court must also
7    examine whether "(1) [] the named plaintiffs and their counsel have any
8    conflicts of interest with other class members and (2) will the named plaintiffs
9    and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v.*
10   *Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). While class
11   representatives do not need to be financial experts, they must have "some
12   minimal familiarity with the litigation" in order to fulfill their obligations to the
13   class sufficiently. *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649 (N.D.
14   Cal. 2007); *see also Michaels v. Ambassador Grp. Inc.*, 110 F.R.D. 84, 90
15   (E.D.N.Y. 1986) ("the law does not require the named plaintiff to possess an
16   extensive knowledge of federal securities laws").

17   As discussed above, Tsui and Lugo are both typical and adequate
18   representative of the class that they propose to represent. Class Counsel have
19   also sufficiently established that they are highly qualified and experienced
20   counsel in class action litigation, including ERISA litigation.[58] Accordingly, the
21   Court concludes that the typicality and adequacy prerequisites are satisfied for
22   the purpose of preliminary approval.

23   **2.    Rule 23(b)(1) Requirements**

24   Under Rule 23(b)(1), a class action may be maintained if:
25   prosecuting separate actions by or against individual class members
26   would create a risk of:

27

28   [58]    Ferich Declaration ¶ 33 & 37-43; Schork Declaration ¶ 31 & 35-41.

(A)   inconsistent or varying adjudications with respect to
      individual class members that would establish incompatible
      standards of conduct for the party opposing the class; or

(B)   adjudications with respect to individual class members that, as
      a practical matter, would be dispositive of the interests of the
      other members not parties to the individual adjudications or
      would substantially impair or impede their ability to protect
      their interests.

Fed. R. Civ. P. 23(b)(1). In short: "Rule 23(b)(1)(A) considers possible
prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative
class members." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008).

Rule 23(b)(1)(A) covers cases in which "the [defendant] must treat all
alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614; *see also
Munro*, 2019 WL 7842551 at *8 ("the nature of a defined contribution plan
means a fiduciary must treat participants uniformly"). Here, varying
adjudications of the claims of thousands of individual Class Members would
very likely produce the same type of absurd result that Rule 23(b)(1)(A) seeks to
avoid: incompatible standards of conduct for Defendants that could not be
individually implemented due to the collective nature of the Plan itself.

Alternatively, the Court finds that certification would also be appropriate
under Rule 23(b)(1)(B). Courts in the Ninth circuit often certify ERISA classes
under Rule 23(b)(1)(B). *See Munro*, 2019 WL 7842551 at *9; *see also Marshall v.
Northrop Grumman Corp.*, 2017 WL 6888281, at *10 (C.D. Cal. Nov. 2, 2017)
(collecting cases). Indeed, the Supreme Court describes a "classic example" of
a Rule 23(b)(1)(B) class to include "actions charging 'a breach of trust by an
indenture trustee or other fiduciary similarly affecting the members of a large
class' of beneficiaries, requiring an accounting or similar procedure 'to restore
the subject of the trust.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999).

-22-

The instant Action involves injuries to class members on a Plan-wide basis, so the adjudication of individual claims could very well be dispositive of the interests of other class members and could substantially impair their ability to protect their interests.

For the foregoing reasons, the Court concludes that the requirements for certification on a preliminary basis under Rule 23(a) and Rule 23(b)(1), for the purpose of settlement, are satisfied.

## C.    Notice Requirements

The Court approves the form and content Notice to Class Members in substantially the form attached as Exhibit A1 to the Settlement Agreement and finds that the proposed Settlement Notice fairly and adequately (1) summarizes the claims that are asserted; (2) identifies the Settlement Class; (3) describes the terms and effect of the Settlement Agreement, including the benefits of the Settlement and the class release; (4) provides information regarding how all class members will receive payments without needing to file a claim form; (5) notifies the Settlement Class that Class Counsel will seek compensation from the Settlement Fund for Attorneys' Fees and Expenses and Class Representative Service Payments; (6) describes how the recipients of the Class Notice may object to the Settlement, or any requested Attorneys' Fees and Expenses; and (7) gives notice to the Settlement Class of the time and place of the Final Approval Hearing, and Class Members' right to appear.

As the parties have shown that the Court will likely be able to approve the proposed settlement under Rule 23(e)(2) and certify the class for the purpose of judgment on the proposed settlement agreement, the Court will direct that notice be given in a reasonable manner to all class members who would be bound by the proposal.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.     Plaintiff's instant Motion for preliminary approval of class action settlement [ECF No. 82] is **GRANTED**.

2.     The following non-opt out class is **PRELIMINARILY CERTIFIED** for settlement purposes only under the terms of the Settlement Agreement:

> All persons who participated in the Plan with account balances at any time during the period from June 13, 2016 through January 1, 2025 ("Class Period"), including any Beneficiary of a deceased Person who participated in the Plan and had an account balance at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan and had an account balance at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries, any Plan fiduciaries, and the Judges assigned to this case.

If the Court does not issue the Final Approval Order and Judgment, then the certification will be vacated, and Defendants shall not be deemed to have admitted the propriety of Class certification under any provision of Rule 23.

3.     The Court **APPOINTS** attorneys Andrew W. Ferich and Robert Ahdoot of Adhoot & Wolfson, PC, and attorney Erich P. Schork of the Roberts Law Firm, U.S., P.C., as Class Counsel.

4.     The Court **APPOINTS** Nickolas Tsui and William Lugo as the Class Representatives for settlement purposes only.

5.     The Court **APPROVES** the retention by Class Counsel of Analytics Consulting LLC. as the Settlement Administrator.

6.     Pending the final determination of whether the Settlement Agreement should be approved, all Class Members are **PRELIMINARY ENJOINED** and **BARRED** from directly, through Representatives, or in any other capacity, commencing any action or proceeding in any court or tribunal

asserting any of the Released Claims against Defendants, the Released Parties, or the Plan, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Action and Plaintiffs' Released Claims.

7. The Court **APPROVES** the Notice to Class Members in substantially the form attached as Exhibit A to the Settlement Agreement.

8. The Court **DIRECTS** Parties to give Notice as follows:

a. Defendants shall use reasonable efforts to cause the Plan Recordkeepers to provide to the Settlement Administrator by February 20, 2026, the Class Member identifying information, as defined in the Settlement Agreement in Section 8.2, sufficient to implement the Plan of Allocation and distribute the Net Settlement on the terms provided for in the Agreement. The Class Member identifying information provided to the Settlement Administrator pursuant to this Order shall be used solely for the purpose of providing Notice of this Settlement and distribution of the Settlement Fund, and for no other purpose.

b. Within 10 calendar days of receipt of Class Member identifying information, the Settlement Administrator shall cause the Notice to be sent to each Class Member by First Class Mail.

c. The same date that the Notice is initially mailed, the Settlement Administrator shall establish a website containing, the Notice, the Agreement and its exhibits, this Order, the Complaint, and the Motions for Preliminary Approval and Final Approval (when filed); the Motion for Attorneys' Fees and Expenses (when filed); any approval order of other Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the parties, as well as the date, time, and

instructions to attend the Final Approval Hearing (and any changes thereto).

d.      The same date that the Notice is initially mailed, the Settlement Administrator shall establish a toll-free telephone number to which Class Members can direct questions about the Settlement.

e.      The Court concludes that the Notice to be provided as set forth in this Order is the best means of providing notice to the Class Members as is practicable under the circumstances, and, when completed, it shall constitute due and sufficient notice of the Settlement and the Final Approval Hearing to all persons affected by or entitled to participate in the Settlement or the Final Approval Hearing, in full compliance with the requirements of due process and the Federal Rules of Civil Procedure.

f.      All reasonable costs incurred by the Settlement Administrator for providing the Settlement Notice shall be paid as set forth in the Agreement.

9.      A final approval hearing is **SET** for Wednesday, September 23, 2026, at 10:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California 92701.

a.      Not later than March 27, 2026, Class Counsel shall submit their papers in support of final approval of the Agreement and in support of Class Counsel's Fee and Expense Applications and Approval of Case Contribution Awards.

b.      Not later than May 15, 2026, the Settlement Administrator shall submit its declaration affirming that the notice process has been completed pursuant to the Settlement Agreement.

**IT IS SO ORDERED.**

Dated:    December 12, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE